UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CPC LOGISTICS, INC., et al., | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 4:11CV774 JCH |
| | ) | |
| INTERNATIONAL PAPER COMPANY, | ) | |
| | ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant International Paper Company's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) & 12(b)(6), filed July 22, 2011. (ECF No. 19). The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

On or about December 17, 2000, Plaintiff CPC Logistics, Inc. (formerly known as Consolidated Personnel Corp.) ("CPC Logistics") entered into a Driver Lease Agreement with Defendant International Paper Company. (Complaint ("Compl."), ¶ 6). Pursuant to the terms of the Driver Lease Agreement, CPC Logistics agreed to provide Defendant with the services of duly trained, professional truck drivers for purposes of supporting Defendant's transportation operations, and in return, Defendant agreed to pay CPC Logistics for such services in accordance with the specific payment schedules attached to and incorporated by reference into the Driver Lease Agreement. (Id., ¶ 7). Per the terms of the payment schedules covering drivers provided to Defendant's Mason, Ohio, and Fond du Lac, Wisconsin, transportation operations, Defendant agreed

---

[1] The Court's background section is taken from Plaintiffs' Complaint, to which Defendant has not yet filed an answer.

to pay CPC Logistics certain Wage Rates, Applicable Taxes and Workers' Compensation Rates, and "Direct Charges," defined as follows:

> Direct charges are [CPC Logistics'] rates for wages and fringe benefits (initial rates listed below), as well as payments [CPC Logistics] makes under the Agreement to or for the benefit of workers covered by this Schedule "A" or in connection with the services provided to customer. Direct charges also include without limitation, amounts paid pursuant to any applicable collective bargaining agreement, any law or regulation, or any judgment or other resolution of a dispute, as well as costs incurred for road expenses (tolls, scale fees and the like), uniforms, and cash advances paid to workers.

(Compl., ¶¶ 8, 10, and att. Exhs. B, C). According to CPC Logistics, effective January 1, 2006, CPC Logistics assigned the Driver Lease Agreement to Plaintiffs CPC Services, Inc. ("CPC Services"), a wholly owned subsidiary of CPC Logistics, and CPC Paper & Packaging, LLC ("CPC P&P"), a wholly owned subsidiary of CPC Services. (Id., ¶ 9).[2]

During the period of time that CPC provided its services to Defendant under the Driver Lease Agreement, certain of CPC's employees assigned to Defendant's operations were covered by collective bargaining agreements with Teamsters Local Union No. 100 (representing employees assigned to Defendant's facility in Mason, Ohio), and Teamsters Local Union No. 200 (representing employees assigned to Defendant's facility in Fond du Lac, Wisconsin). (Compl., ¶ 11). Pursuant to those collective bargaining agreements, CPC was required to make specified pension contributions into the Central States Pension Fund, a multiemployer pension plan within the meaning of Sections 3(37) and 4001(a)(3) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1002(37) and 1301(a)(3), for those employees assigned to Defendant's Mason, Ohio, and Fond du Lac, Wisconsin, locations. (Id., ¶ 12). During the period CPC provided services to Defendant at those locations under the Driver Lease Agreement, CPC made the

---

[2] For convenience, the Court at times refers to Plaintiffs collectively as "CPC."

contractually required contributions, and Defendant reimbursed CPC for the pension contributions. (Id., ¶ 13).

On or about April 9, 2009, Defendant terminated CPC's driver services at its Mason, Ohio facility. (Compl., ¶ 14). On or about September 30, 2009, CPC ceased providing services to Defendant at its Fond du Lac, Wisconsin facility. (Id., ¶ 15). On or about December 1, 2009, CPC's obligation to contribute to the Central States Pension Fund in respect of any collective bargaining agreement permanently ceased, thereby effecting a "complete withdrawal" from the fund, as defined in Section 4203(a) of ERISA, 29 U.S.C. § 1383(a). (Id., ¶ 16). As a result of its complete withdrawal, CPC and members of its controlled group of companies were assessed withdrawal liability pursuant to Section 4201(b) of ERISA, 29 U.S.C. § 1381(b), in the principal amount of $9,770,183.71. (Id., ¶ 17). CPC received a notice and demand for payment of the 2009 withdrawal liability from the Central States Pension Fund on or about April 22, 2010. (Id., ¶ 18).[3]

From May, 2010, through March, 2011, CPC made monthly interim withdrawal liability payments to the Central States Pension Fund. (Compl., ¶ 21). On or about March 18, 2011, CPC entered into a settlement agreement with the Central States Pension Fund, which required CPC to make a lump sum payment to the fund. (Id., ¶ 23). CPC made the required payment on or about March 23, 2011. (Id.).

According to Plaintiffs, CPC has paid a total of $2,486,742.60 in withdrawal liability to the Central States Pension Fund that is directly attributable to pension contributions made on behalf of

---

[3] On or about October 19, 2010, CPC and its controlled group members received a revised letter of notification, assessing an adjusted 2009 withdrawal liability in the amount of $9,746,204.23. (Compl., ¶ 19).

the employees CPC provided to Defendant pursuant to the Driver Lease Agreement.[4] (Compl., ¶ 24). Despite having invoiced Defendant repeatedly, CPC has yet to receive any reimbursement for the amount of withdrawal liability allegedly incurred and paid by CPC for which Defendant is obligated under the Driver Lease Agreement. (Id., ¶¶ 22, 25, 26).

CPC filed the instant Complaint on May 2, 2011. (ECF No. 1). In its sole claim for relief, CPC alleges Defendant breached the terms of the Driver Lease Agreement and payment schedules thereto, by refusing to reimburse CPC for the amount of withdrawal liability incurred by CPC that was attributable to pension contributions made on behalf of employees CPC provided to Defendant pursuant to the Driver Lease Agreement. (Compl., ¶ 29). As stated above, Defendant filed its Motion to Dismiss on July 22, 2011, claiming CPC's Complaint must be dismissed (a) because none of the named Plaintiffs has standing to bring the claim alleged in the suit, and (b) for failure to state a claim for relief. (ECF Nos. 19, 20).

## DISCUSSION

In its Motion to Dismiss, Defendant asserts CPC's cause of action must be dismissed because Plaintiffs lack standing to pursue the matter. With respect to Plaintiff CPC Logistics, Defendant maintains that the alleged assignment divested it of standing to assert any rights or claims against Defendant under the Driver Lease Agreement. (Defendant International Paper Company's Memorandum of Law in Support of Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) & 12(b)(6), PP. 1-2, 5-6). With respect to Plaintiffs CPC Services and CPC P&P, Defendant asserts those parties lack standing because the alleged assignment is invalid pursuant to the following provision in the Driver Lease Agreement:

---

[4] This amount consists of $443,123.02 in "interim" payments, and $2,043.619.58 in a lump sum payment. (Compl., ¶ 24).

> This Agreement shall be binding upon the parties hereto, their legal representatives, successor and assigns, but any assignment of the Agreement or any interest herein by either party without the prior written consent of the other party shall be void.

(Id., PP. 2, 6-7, citing Compl., att. Exh. A, ¶4(f)). Defendant thus maintains that absent an allegation regarding Defendant's consent, the alleged assignment is void and unenforceable under the explicit terms of the Driver Lease Agreement. (Id.).

The Eighth Circuit has held that, "Article III of the United [States] Constitution confines the federal courts to adjudicating actual cases and controversies." Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001) (internal quotations and citation omitted).[5] "'To satisfy the case or controversy requirement of Article III, which is the irreducible constitutional minimum of standing, a plaintiff must, generally speaking, demonstrate that he has suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision.'" Oti Kaga, Inc. v. South Dakota Housing Development Authority, 342 F.3d 871, 878 (8th Cir. 2003), quoting Bennett v. Spear, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (internal quotations omitted); see also Potthoff, 245 F.3d at 715. Defendant's standing argument thus implicates Federal Rule of Civil Procedure 12(b)(1), because "if a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction." ABF Freight System, Inc. v. International Broth. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011), citing Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002).

Upon consideration, the Court finds the allegations in CPC's Complaint sufficient to survive a motion to dismiss for lack of standing at this time. With respect to CPC Logistics, the Court notes that as the entity that originally executed the Driver Lease Agreement with Defendant, CPC Logistics

---

[5] "Article III standing is a threshold question in every federal court case." United States v. One Lincoln Navigator 1998, 328 F.3d 1011, 1013 (8th Cir. 2003).

potentially has standing to pursue the claim in the event the alleged assignment proves invalid. Further, as noted by Plaintiffs, the Complaint asserts the assignment was effective January 1, 2006 (see Compl., ¶ 9), thereby leaving open the possibility that even with a valid assignment CPC Logistics retains standing for any injury incurred before that date. Finally, the Court finds Plaintiffs CPC Services and CPC P&P potentially have standing as well, as the claim may belong to them in the event the alleged assignment ultimately proves valid. See Jiffy Lube Intern., Inc. v. Morgan, 1992 WL 12995 at *2 (D. Md. Jan. 21, 1992) ("[T]he assignee of a contract or agreement is the owner of the assigned claim or right.").[6] Defendant's Motion to Dismiss on this basis will therefore be denied.[7]

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(1) & 12(b)(6) is **DENIED** without prejudice.

Dated this 30th day of September, 2011.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[6] While the Court notes CPC's Complaint is not a model of clarity, and may better have been pled in the alternative, it does not find such deficiency mandates either dismissal or repleading at this time. Rather, because the Court agrees with CPC it is likely one or more Plaintiffs has standing to pursue the claim, it will deny the instant Motion to Dismiss and permit discovery to proceed. The dismissal will be without prejudice, however, leaving Defendant free to renew its motion should circumstances so warrant.

[7] Under the same reasoning, the Court will deny Defendant's Motion to Dismiss for Failure to State a Claim without prejudice.